IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) | |
| CBBT, L.P., | ) ) | CASE NO. 11-30036-H3-11 |
| Debtor, | ) ) ) | |

MEMORANDUM OPINION

The court has held an evidentiary hearing on "J. G. & Sonya Keeling's Motion for Relief from the Stay Regarding Nonexempt Property" (Docket No. 36). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

CBBT, L.P. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 3, 2011. Debtor is a single asset real estate entity.

During 2003, J. G. and Sonya Keeling (the "Keelings") purchased real property located in Chambers County, Texas, from Cemex Foundation. The Keelings sold two portions of the real property to purchasers other than Debtor.

During 2005, the Keelings sold the remaining portion to Debtor, for $3 million.  Sonya Keeling[1] testified that Debtor made a down payment of $500,000.

Debtor's property consists of approximately 145 acres of land, approximately 50 acres of which is submerged under water.  Doyle Toups, the individual who signed the petition in the instant Chapter 11 case on Debtor's behalf, testified that the submerged lands, which he described as "finger lakes," are connected to Cedar Bayou, a navigable water, and allow the property to be used for the storing and staging of tugboats and barges, as well as for the loading and unloading of barges.

Toups is a licensed real estate broker.  Toups, while he was an agent working for the commercial real estate firm Grubb & Ellis, represented the seller, Cemex Foundation, when the Keelings acquired the property.

Debtor executed a promissory note, in the original principal amount of $2.5 million, payable to the Keelings.  The note required Debtor to make payments, based on a 15 year amortization, for five years, with a balloon payment due at maturity on November 29, 2010.  The note bore an interest rate of five percent during its term, and eighteen percent after

---

[1] Where the singular name "Keeling" appears in this opinion, it refers to Sonya Keeling, who testified at the hearing on the instant motion.

maturity.  The amount of the monthly payment due each month under the note prior to maturity was $19,769.84.  (Keeling Exhibit 1).

Toups testified that, after Debtor purchased the property from the Keelings, Debtor held the property for sale.  He testified that there have been "high intensity" efforts to sell the property from 2005, when Debtor acquired the property, until the present.  He testified that, immediately before the petition date in the instant Chapter 11 case, the property was listed for sale, with a listing price of $8.995 million.

Toups testified that, during Debtor's ownership of the property, it has sought to obtain revenue by leasing portions of the property.  He testified that all leases were short-term leases, because a long term lease might make the property unattractive to a potential purchaser.

Debtor's statement of financial affairs indicates that Debtor had gross revenues of $71,878 for 2009, and $80,516 for 2010.  (Keeling Exhibit 9).  Toups testified that either he or Debtor's other principal, W. T. Dobbins, provided additional funds to Debtor, in the form of both loans and capital contributions, to allow Debtor to make payments to the Keelings under the note, as well as to pay ad valorem taxes, and for maintenance of the property.

During 2010, Debtor sought to refinance the Keelings' note.  Toups testified that Debtor was unable to obtain outside

3

financing, because Debtor lacked a substantial income stream or a credible long-term tenant on the property.  He testified that Debtor attempted to negotiate for an extension from the Keelings.

Keeling testified that the Keelings offered to extend the note for an additional five year term, based on a 15 year amortization, with payments to remain at the same amount, if Debtor would agree to a slightly higher interest rate, and make a $50,000 principal payment.  She testified that Debtor rejected the Keelings' offer.

On April 4, 2011, Debtor filed its first amended Chapter 11 plan.  In the plan, Debtor proposes to commence making payments to the Keelings, based on a five percent interest rate, in August, 2011.  Debtor proposes either to refinance the debt by August, 2011, to sell the property by executing an earnest money contract by September, 2011, or to sell the property at an auction by December, 2011.  (Docket No. 48).

Toups testified that he has listed the property under his real estate broker's license prepetition, and has listed the property with another broker since the petition date.[2]  He testified that he has been negotiating with several potential buyers of the property.  He testified that none of the potential

---

[2] Debtor has not sought court approval for employment of this broker.

4

buyers has executed an earnest money contract or performed due diligence with respect to the property.

Toups testified that Debtor has made no payment to the Keelings since October, 2010.

The Keelings have filed a proof of claim, in the amount of $1,980,433.14.

In the instant motion, the Keelings seek relief from stay for cause, on grounds Debtor filed the instant case in bad faith to obtain an unfair advantage in a two party dispute, and under Section 362(d)(3) for failure of Debtor to make payments at the nondefault rate of interest or propose a feasible plan within 90 days after the date of filing of the petition.

## Conclusions of Law

Section 362(d) of the Bankruptcy Code provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> > * * *
>
> > (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may

5

>  determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--
>
>>  (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>>
>>  (B) the debtor has commenced monthly payments that--
>>
>>>  (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>>>
>>>  (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

11 U.S.C. § 362(d).

>  Section 362(g) of the Bankruptcy Code provides:
>
>  (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--
>
>>  (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>>
>>  (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

6

In the instant case, Debtor has not commenced monthly payments.  Thus Debtor has not satisfied Section 362(d)(3)(B). Thus, resolution of the instant motion depends on whether Debtor has satisfied Section 362(d)(3)(A).

The determination of whether a plan satisfies Section 362(d)(3)(A) does not require a mini-confirmation hearing.  In re Harmony Holdings, LLC, 393 B.R. 409 (Bankr. D.S.C. 2008). However, the debtor must show, inter alia, that the proposed plan is not patently unconfirmable.  In re Windwood Heights, Inc., 385 B.R. 832 (Bankr. N.D.W. Va. 2008).

In the instant case, Debtor's plan is patently unconfirmable because it is clear that it was not proposed in good faith.  Section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed in good faith.  11 U.S.C. § 1129(a)(3).

The requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan, keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start.  Financial Sec. Assurance Inc. v. T-H New Orleans Ltd. Partnership (In re T-H New Orleans Ltd. Partnership), 116 F.3d 790 (5th Cir. 1997).

The instant case is indeed a two party dispute.  Debtor does hold substantial equity in its single asset real estate. However, it is clear that Debtor has had opportunities to obtain

refinancing outside of bankruptcy on reasonable terms, and filed the instant plan in an attempt to force terms more favorable to Debtor on the Keelings.  Debtor's principals are sophisticated investors, with substantial experience in real estate transactions.  There is no evidence that any financial exigence, other than an inability or unwillingness of the principals to make the balloon payment, or renegotiate the note on terms less favorable than those identified in the proposed plan; precipitated the filing of the instant case, or the instant plan.  Moreover, despite the testimony of Toups that he has negotiations underway for sale of the property, that testimony is not distinguishable from his testimony that he has conducted high intensity efforts to sell the property since 2005, when Debtor acquired the property.  The court concludes, in the totality of the circumstances, that the plan in the instant case was not filed in good faith.  Thus, the plan is not confirmable, and the stay lifts under Section 362(d)(3).

Based on the foregoing, a separate Judgment will be entered granting "J. G. & Sonya Keeling's Motion for Relief from the Stay Regarding Nonexempt Property" (Docket No. 36).

Signed at Houston, Texas on May 9, 2011.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

8